**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.

STEPHEN BUSHANSKY,

    Plaintiff,

v.

APRIA, INC.,
DANIEL J. STARCK,
JOHN G. FIGUEROA,
MICHAEL AUDET,
JOHN R. MURPHY,
NORMAN C. PAYSON,
DEVON RINKER,
NEIL P. SIMPKINS,
LYNN SHAPIRO SNYDER,
MIKE S. ZAFIROVSKI,
TERESA KLINE, and
SUSANNAH GRAY,

    Defendants.

**COMPLAINT AND JURY DEMAND**

Plaintiff Stephen Bushansky ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. Plaintiff brings this action against Apria, Inc. ("Apria" or the "Company") and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17

C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which the Company will be acquired by Owens & Minor, Inc. ("Owens & Minor") through Owens & Minor's subsidiary StoneOak Merger Sub Inc. ("Merger Sub") (the "Proposed Transaction").

2. On January 10, 2022, Apria and Owens & Minor issued a joint press release announcing that they had entered into an Agreement and Plan of Merger (the "Merger Agreement"), dated January 7, 2022, to sell Apria to Owens & Minor. Under the terms of the Merger Agreement, each Apria stockholder will be entitled to receive $37.50 in cash for each Apria share they own (the "Merger Consideration"). The Proposed Transaction is valued at approximately $1.45 billion.

3. On February 22, 2022, Apria filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that Apria stockholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning, among other things: (i) Apria's financial projections; and (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor Goldman Sachs & Co. LLC ("Goldman"). Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. In short, unless remedied, Apria's public stockholders will be irreparably harmed because the Proxy Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting or appraisal decision on the Proposed Transaction. Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists. Apria maintains seven branch office locations in this District. Moreover, each of the Individual Defendants, as Company officers or directors, either resides in this District or has extensive contacts within this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Apria common stock.

9. Defendant Apria is a Delaware corporation with its principal executive offices located at 7353 Company Drive, Indianapolis, Indiana 46237. Apria provides integrated home healthcare equipment and related services in the United States. The Company's common stock is traded on the Nasdaq Global Select Market under the ticker symbol "APR."

10. Defendant Daniel J. Starck ("Starck") has been Chief Executive Officer ("CEO")

of the Company since February 2015, and a director since December 2013.

11. Defendant John G. Figueroa ("Figueroa") has been Chairman of the Board and a director of the Company since November 2012. Defendant Figueroa previously served as the Company's CEO from November 2012 until January 2014.

12. Defendant Michael Audet ("Audet") has been a director of the Company since June 2019.

13. Defendant John R. Murphy ("Murphy") has been a director of the Company since August 2019.

14. Defendant Norman C. Payson ("Payson") has been a director of the Company since 2006. Defendant Payson previously served as Executive Chairman of the Board and the Company's CEO from October 2008 until November 2012.

15. Defendant Devon Rinker ("Rinker") has been a director of the Company since February 2021.

16. Defendant Neil P. Simpkins ("Simpkins") has been a director of the Company since October 2008.

17. Defendant Lynn Shapiro Snyder ("Snyder") has been a director of the Company since August 2019.

18. Defendant Mike S. Zafirovski ("Zafirovski") has been a director of the Company since October 2011.

19. Defendant Teresa Kline ("Kline") has been a director of the Company since May 4, 2021.

20. Defendant Susannah Gray ("Gray") has been a director of the Company since May 4, 2021.

21. Defendants identified in paragraphs 10 to 20 are collectively referred to herein as the "Board" or the "Individual Defendants."

**OTHER RELEVANT ENTITIES**

22. Owens & Minor is a Virginia corporation with its principal executive offices located at 9120 Lockwood Boulevard, Mechanicsville, Virginia 23116. It is a global healthcare solutions company that incorporates product manufacturing, distribution support and innovative technology services to deliver significant and sustained value across the breadth of the industry — from acute care to patients in their home. Owens & Minor's common stock is traded on the New York Stock Exchange under the ticker symbol "OMI."

23. Merger Sub is a Delaware corporation and an indirect, wholly owned subsidiary of Owens & Minor.

**SUBSTANTIVE ALLEGATIONS**

**Company Background**

24. Apria is a leading provider of integrated home healthcare equipment and related services in the United States. The Company offers a comprehensive range of products and services for in-home care and delivery across three core service lines: (1) home respiratory therapy (including home oxygen and non-invasive ventilation services); (2) obstructive sleep apnea treatment (including continuous positive airway pressure and bi-level positive airway pressure devices, and patient support services); and (3) negative pressure wound therapy. Additionally, Apria supplies a wide range of home medical equipment and other products and services to help improve the quality of life for patients with home care needs. Apria's revenues are generated through fee-for-service and capitation arrangements with third-party healthcare payors, including government and commercial payors ("Payors") for equipment, supplies, services and other items Apria rents or sells to patients. Through its offerings, Apria also provides patients with a variety

5

of clinical and administrative support services and related products and supplies, most of which are prescribed by a physician as part of a care plan. The Company is focused on being the industry's highest-quality provider of home healthcare equipment and related services, while maintaining its commitment to being a low-cost operator. Apria serves over 2 million patients annually and offers a compelling value proposition to patients, providers and Payors by allowing patients to receive necessary care and services in the comfort of their own home, while, at the same time, reducing the costs of treatment.

25. On November 4, 2021, the Company issued a press release announcing its third quarter 2021 financial results, including net revenue of $287.2 million, up 3.8% compared to $276.8 million in the third quarter of 2020; and net income of $22.8 million, or $0.60 per diluted share, up 300.1% from $5.7 million versus the prior year period. Reflecting on the Company's results and looking toward the future, defendant Starck stated:

> We delivered solid third quarter 2021 financial results that were reflective of our continued execution and operational improvements building on momentum from the first half of the year, despite external headwinds. Third quarter revenue was in-line with our guidance while Adjusted EBITDA and Adjusted EBITDA less Patient Equipment Capex were at the high end or better than our forecast. We continue to see strong new patient volume for oxygen driven by the Delta variant which we expect to remain at elevated levels compared to historical run rates. We also continue to see elevated new patients seeking OSA treatment, and I am proud of the entire Apria team for their perseverance and commitment of effectively working with patients as we manage through the equipment shortages driven by the disruption created by the Philips recall and other supply chain challenges.
>
> In September, DMEscripts LLC announced a strategic partnership with the four national Durable Medical Equipment providers, including Apria, and two industry trade associations to drive greater use and adoption of e-Prescribe. We think wide spread adoption for e-Prescribe could be a game-changer and a meaningful driver of efficiencies and cost savings for our industry over time. Our team continues to perform at a high level providing the highest level of quality care for our patients despite the significant disruption caused by the Recall and supply chain issues and I remain confident that Apria will be able to finish the year on a high note.

**The Proposed Transaction**

26. On January 10, 2022, Apria and Owens & Minor issued a joint press release announcing the Proposed Transaction. The press release states, in relevant part:

RICHMOND, Va. & INDIANAPOLIS--Owens & Minor, Inc. ("Owens & Minor") (NYSE: OMI) and Apria, Inc. ("Apria") (Nasdaq: APR) today announced that the companies have entered into a definitive agreement pursuant to which Owens & Minor will acquire Apria for $37.50 in cash per share of common stock, representing an equity value of approximately $1.45 billion.

"I'm very excited about the acquisition of Apria, which will strengthen our total company value proposition. The combination of two complementary businesses in Byram Healthcare and Apria will enable us to better serve the entire patient journey - through the hospital and into the home - ultimately furthering our mission of Empowering Our Customers to Advance Healthcare," said Edward A. Pesicka, President & Chief Executive Officer of Owens & Minor. "In addition, this transaction diversifies our total company revenue stream by expanding our presence in the higher-growth home healthcare market."

Pesicka added, "We are impressed by what Apria has built for its customers, and I look forward to welcoming Dan Starck and the Apria team to Owens & Minor upon close."

"I am energized and enthusiastic to join Owens & Minor," said Dan Starck, Chief Executive Officer of Apria. "Both companies share cultures fueled by a commitment to customers, patients, teammates and the communities we serve. We look forward to joining together and delivering the highest quality healthcare solutions to our customers."

**Strategic Rationale**

- **Strengthens total company value proposition**, enables us to better serve the entire patient journey and positions Owens & Minor as a leader in the home healthcare market. The transaction builds upon Owens & Minor's strong capabilities in product manufacturing and healthcare services.

- **Accelerates growth and diversifies revenue base** by expanding our presence in the higher-growth home healthcare market.

- **Accretive to revenue, adjusted EBITDA, adjusted earnings per share**, and enhances our free cash flow generation, enabling Owens & Minor to rapidly deleverage while continuing to invest across the business.

- **Expands our Patient Direct platform** with access to over 90 percent of insured healthcare customers in the U.S.

- **Broadens our Patient Direct product portfolio** by combining our strength in diabetes, ostomy, incontinence, and wound care, with Apria's product portfolio strength in home respiratory, obstructive sleep apnea, and negative pressure wound therapy.  These product portfolios are complementary and do not overlap as many of these products are needed to treat the same and multiple chronic and acute conditions.

- **Increases the attractiveness to Payors, Providers, and Patients** due to the broader product portfolio, combined with our scale, geographic footprint, and delivery model.

- **Creates a platform for future growth** within this highly fragmented and growing space, with an approximate $50 billion total addressable market.

- **Enables the acceleration of support for our hospital customers** seeking to expand into home healthcare delivery.

**Transaction Details**

Under the terms of the agreement, which was unanimously approved by the Board of Directors of each company, Owens & Minor will acquire Apria for $37.50 in cash per share of common stock, representing an equity value of approximately $1.45 billion, as well as the assumption of debt and cash for a total transaction value of approximately $1.6 billion.

This price per share represents a 26% and 24% premium over Apria's closing share price on January 7, 2022 and 30-day volume weighted average price, respectively.

The transaction is subject to customary closing conditions, including the Hart Scott Rodino Act and other regulatory approvals and the approval of Apria's stockholders, and is expected to close during the first half of 2022.

**Advisors**

Evercore acted as the lead financial advisor and J.P. Morgan Securities LLC acted as financial advisor to Owens & Minor in connection with this acquisition.  Owens & Minor's legal advisor is Kirkland & Ellis LLP.

Goldman Sachs & Co. LLC acted as the lead financial advisor and Citigroup Global Markets Inc. acted as financial advisor to Apria in connection with the acquisition. Apria's legal advisor is Simpson Thacher & Bartlett LLP.

**Insiders' Interests in the Proposed Transaction**

27.  Apria insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will receive unique benefits in connection with the Proposed Transaction not available to Plaintiff and the other public stockholders of Apria.

28.  Notably, Company insiders also stand to reap substantial financial benefits for securing the deal with Owens & Minor.  Pursuant to the Merger Agreement, all outstanding restricted stock units ("RSUs"), performance stock units ("PSUs"), long-term incentive plan awards ("LTIP Award"), and stock appreciation rights ("SARs") will vest and convert into the right to receive cash payments.  The following table summarizes the amounts with respect to unvested RSUs, PSUs, LTIP Awards, and SARs that Company insiders stand to receive:

| Executive Officers and Directors | Aggregate Amount Payable for Unvested Apria RSUs ($)(1) | Aggregate Amount Payable for Unvested Apria PSUs ($)(2) | Aggregate Amount Payable for Unvested Apria LTIP Awards ($)(3) | Aggregate Amount Payable for Unvested Apria SARs ($)(4) |
|---|---|---|---|---|
| *Directors (excluding Daniel J. Starck)* | | | | |
| John G. Figueroa | 189,713 | — | — | — |
| Michael Audet | — | — | — | — |
| John R. Murphy | 189,713 | — | — | 850,832 |
| Norman C. Payson, M.D. | — | — | — | — |
| Devon Rinker | — | — | — | — |
| Neil P. Simpkins | — | — | — | — |
| Lynn Shapiro Snyder | 189,713 | — | — | 850,832 |
| Mike S. Zafirovski | 189,713 | — | — | — |
| Teresa Kline | 189,713 | — | — | — |
| Susannah Gray | 189,713 | — | — | — |
| *Named Executive Officers* | | | | |
| Daniel J. Starck | 1,027,613 | 2,055,225 | 169,607 | 4,530,051 |
| Debra L. Morris | 450,563 | 901,125 | 84,803 | 2,264,253 |
| Robert P. Walker | 132,788 | 265,575 | 63,602 | 850,832 |
| Mark E. Litkovitz | 132,788 | 265,575 | 63,602 | 850,832 |
| Raoul Smyth(5) | — | — | 63,602 | — |
| *All Other Executive Officers as a Group*(6) (3 persons) | 654,450 | 1,308,900 | 127,205 | 3,633,698 |

9

29.     Moreover, if they are terminated in connection with the Proposed Transaction, Apria's named executive officers are set to receive substantial cash severance payments in the form of golden parachute compensation, as set forth in the following table:

| Name | Cash ($)(1) | Equity ($)(2) | Pension/ NQDC ($) | Perquisites /Benefits ($)(3) | Tax Reimbursement ($)(4) | Other ($)(5) | Total ($)(6) |
|---|---|---|---|---|---|---|---|
| Daniel J. Starck | 3,849,561 | 7,782,496 | — | — | — | — | 11,632,147 |
| Debra L. Morris | 2,059,770 | 3,700,744 | — | — | — | — | 5,760,514 |
| Robert P. Walker | 1,284,126 | 1,312,797 | — | — | — | — | 2,596,923 |
| Mark E. Litkovitz | 1,216,998 | 1,312,797 | — | — | — | — | 2,529,795 |
| Raoul Smyth(7) | — | 63,602 | — | — | — | — | 63,602 |

**The Proxy Statement Contains Material Misstatements or Omissions**

30.     Defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Apria's stockholders.  The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.

31.     Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) Apria's financial projections; and (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, Goldman.

*Material Omissions Concerning Apria's Financial Projections*

32.     The Proxy Statement omits material information regarding the Company's financial projections.

33.     For example, the Proxy Statement fails to disclose the line items underlying the Company's: (i) Net Revenue; (ii) Adjusted EBITDA; and (iii) Unlevered Free Cash Flow ("UFCF").

34. The omission of this information renders the statements in the "Certain Financial Projections" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

*Material Omissions Concerning Goldman's Financial Analyses*

35. The Proxy Statement describes Goldman's fairness opinion and the various valuation analyses performed in support of its opinion. However, the descriptions of Goldman's fairness opinion and analyses fail to include key inputs and assumptions underlying these analyses. Without this information, as described below, Apria's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Goldman's fairness opinion in determining whether to vote in favor of the Proposed Transaction or seek appraisal.

36. With respect to Goldman's *Illustrative Present Value of Future Share Price Analysis*, the Proxy Statement fails to disclose: (i) quantification of the net debt of Apria as of September 30, 2021; (ii) quantification of the number of fully-diluted shares of Apria common stock outstanding as of January 5, 2022; and (iii) quantification of the inputs and assumptions underlying the discount rate of 8.8%.

37. With respect to Goldman's *Illustrative Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) quantification of the estimates of UFCF for Apria for the fourth quarter of fiscal year 2021 through the end of fiscal year 2031; (ii) quantification of the estimated benefits of Apria's net operating losses for the fourth quarter of fiscal year 2021 through the end of fiscal year 2031; (iii) quantification of the terminal values; (iv) quantification of the inputs and assumptions underlying the discount rate range of 7.5% to 9.0%; (v) quantification of the net debt

of Apria as of September 30, 2021; and (vi) quantification of the number of fully-diluted shares of Apria common stock outstanding as of January 5, 2022.

38. With respect to Goldman's *Premia Paid Analysis*, the Proxy Statement fails to disclose: (i) the transactions observed by Goldman in the analysis; and (ii) the premia for each of the transactions analyzed.

39. When a banker's endorsement of the fairness of a transaction is touted to stockholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

40. The omission of this information renders the statements in the "Certain Financial Projections" and "Opinion of Apria's Financial Advisor" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

41. The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of Apria will be unable to make a sufficiently informed decision whether to vote in favor of the Proposed Transaction or seek appraisal and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## COUNT I

### Against All Defendants for Violations of Section 14(a) of the Exchange Act and SEC Rule 14a-9 Promulgated Thereunder

42. Plaintiff repeats and realleges each and every allegation contained above, as though fully set forth herein.

43. During the relevant period, defendants disseminated the false and misleading Proxy

Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

44. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about Apria's financial projections and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, Goldman. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

45. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

46. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

47. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

**Against the Individual Defendants for Violation of Section 20(a) of the Exchange Act**

48. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

49. The Individual Defendants acted as controlling persons of Apria within the meaning

of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Apria and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

50.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

51.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of this document.

52.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the directors.

53.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

54. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Apria's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against defendants as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

D. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: February 23, 2022                             Respectfully submitted,

/s/ *Richard A. Acocelli*
Richard A. Acocelli
**WEISSLAW LLP**
305 Broadway, 7th Floor
New York, NY 10007
Telephone: (212) 682-3025
Facsimile: (212) 682-3010
Email: racocelli@weisslawllp.com

*Attorneys for Plaintiff*